May I please the court, Celia Cohen, on behalf of Plaintiff Appellant Kenneth Hall and Plaintiff Intervenor Appellant Byron Sharper. Let me start by highlighting what is not at issue in this case. First, the District Court found in no party disputes the Plaintiff's Section 2 challenge to the districting system, then governing the election of judges to the Baton Rouge City Court, was mooted by the passage of Act 374. Act 374 replaced the challenged districting system with a new system, never at issue in the litigation below. So isn't the only issue really just whether there was an abuse of discretion in declining to vacate? Precisely, Your Honor, and the answer is yes for two reasons. First, the District Court misread and misapplied the Supreme Court's decision in Bancor and this circuit's decision in Staley when it held that plaintiffs were required to make a showing beyond moodness and lack of fault. No decision of the Supreme Court or of the circuit since Bancor has held as much. The District Court also— There are multiple factors to be examined, though, isn't that right? Your Honor, there are two factors, fault and public interest, and Bancor described fault as the principal condition to which courts must look in deciding whether or not to vacate for moodness. It explained that when a party seeking relief is not at fault for the moodness, fault favors vacater, and that's because it would be inequitable to force a party to acquiesce in an adverse judgment rendered unreviewable by circumstances beyond that party's control. Bancor also went on to explain that the public interest is, and I quote, best served by vacater when the party seeking relief is not responsible for the moodness. So those are the two factors, and here, plaintiffs clearly fall into the category where both equities decidedly favor vacater. You're relying primarily on Bonner? Yes, Your Honor. All right, but I mean, that really dealt with appellate vacater, not District Court vacater. That's correct, Your Honor, but as the District Court concluded here, relying on the Fourth Circuit's decision in Valero, there really isn't a principled reason to apply a different test in Rule 60. Can I ask you a question about the procedural posture of the case? As I understand it, the district judge had written an opinion, and before the time for this case, or ever since, the case was mooted, and the court lost jurisdiction. Correct, Your Honor. The effect of that is that you have an opinion out there that deprives the other party of an opportunity to challenge the merits of that on appeal. Now, I just want to be sure that we get those facts, because as I calculated the days here, it's not clear to me that Rule 60 needed to have been employed in any event. It's available, but I don't want to be clear that we understand that that's the posture, if that's true. Yes, Your Honor. That's correct. Plaintiffs — it's, in fact, unclear whether plaintiffs could have then appealed despite the case being mooted and then filed a suggestion of mootness and gotten review under Appellate Vacater, or whether they needed to file a Rule 60 motion, but as Your Honor points out, the circumstances were entirely out of plaintiffs' control, and it would certainly be inequitable if the test were to be different simply because the case was mooted while their time to appeal was still running. So turning back to the district court's abuse of discretion, first, the error, as I said, was placing plaintiffs in the wrong category, not acknowledging that because plaintiffs are not responsible for the mootness, both fault and public interest decidedly favor Vacater. The district court also erred because it identified two supposed countervailing factors, neither of which is a basis in fact or in law. The first factor that the district court identified was its supposed influence on the Louisiana legislature. As the district court itself acknowledged, however, there was no evidence in the record to conclude that it caused the passage of Act 374, and that's at page 7136 of the record. No defendant argued below that the district court had that influence, and in fact on appeal, the state defendants affirmatively reject any such causal connection, and that's at pages 13 to 14 of the state defendants' brief. But it seems to me that that argument cuts against you, that is to say, if there's an argument that the district court's order or judgment had no effect, then that lessens any public interest in having that order vacated. Your Honor, I disagree for two reasons. First of all, if the fact of a district court decision having limited effect was a basis to deny Vacater, this circuit would not regularly vacate district court decisions for mootness. But more importantly, the harm that Bancor identified is not whether or not the district court decision has broad effect or not. The harm is the loss to the plaintiffs of the fundamental right to appeal an adverse judgment, which exposes them at least to the risk of that judgment spawning legal consequences. And Bancor and its progeny hold that that harm can only be remedied through the grant of Vacater, and that's why that remedy exists. So why has there been no effort at the appellate level to file a 2106 motion to vacate from the level of this court rather than the district court? Your Honor, it was plaintiff's determination that they may not have been able to appeal to this court and then file a suggestion of mootness, and that a Rule 60 motion was the more appropriate course. Of course, if the court were to view a 2106 motion as available, the court could just file a suggestion with the court that it no longer has jurisdiction and the question to vacate it, because the court still had to—he had entered a judgment, but it was time for appeal was still running. That may well be, Your Honor, but the outcome here should be the same. Whatever the posture of the case, plaintiffs certainly haven't waived the argument that the case was moot and should be vacated. But I'm just suggesting that something much more basic than that, that the 60 v. 6 and all of those arguments are simply—really go nowhere because the court lost jurisdiction. You could have suggested—it's not a situation where the case went to judgment, was not appealed, was hanging out there for several years, and then they'd go back and ask—now you're in the 60 v. 6 for sure. But before then, you still can be used in 60 v. 6, but I don't think that any of those things take you anywhere. The real point is simply that this was an order—the effect of this is to deprive a person of the right of appeal, and that's an important consideration. Absolutely, Your Honor, and I would agree with you that whatever the procedural posture of the case, the court has available to it the remedy of vacating that aspect of the June 9 judgment that goes to Plaintiff's moot, Section 2. The district court wrote a thoughtful comment about this, and it pointed to the fact that consistency, in a sense, was important, that he writes an opinion, and the legislature, in a sense, does what he suggests, and then to put it back down doesn't—it ill-serves the court, in essence, so that at least ought to be considered. Now, I'm not clear about the facts of that. Within two days of the opinion being filed, the bill—within a few days, a bill was introduced very quickly. I mean, it was pending. The legislature had this over there, and very quickly acted. It's not clear to me whether this—did this opinion have an effect on that or not. But to Your Honor's point, there really is no basis in the record to conclude that the district court caused the passage of Act 374, but even if there were a basis, that in and of itself is not a basis to deny Plaintiff's relief, and that's because the public interest defined in Bancorp is the interest in the orderly procedure of our adjudicative system, and the public— No, I think it's a—I didn't say it was going to trolling. I'm suggesting to you that the district court, and I think properly, suggested that consistency is a consideration in whether to vacate, and it's using consistency in the sense that the district court issues an opinion out there, and then people relying upon that in effect, not waiting for any other kind of enforcement, act upon it, then it's at some point untoward, and then the district court just vacated. That was, I thought, the suggestion of the district court, and my question to you is, that is a consideration, I think, but my question, if, in fact, it has any basis in terms of what happened, I don't know the answer to that question. That's what I'm trying to get at. I don't think it has any basis, in fact, Your Honor. And that is because, as Your Honor pointed out, HB 76, which was the bill enrolled by the House and then ultimately signed into law by the governor, started long before the district court issued its June 9 judgment, and the two-day turnaround between the June 9 judgment and the enrollment of HB 76 would certainly be a record for a decision to cause the legislature to act. So I agree with Your Honor. If it's an appropriate consideration, then the double problem here is that there's no basis in the record to support the conclusion that the district court had the effect it postulated it may have had. The district court's second error, in terms of identifying a supposed countervailing factor, was identifying the supposed limited effect on the judgment to third parties as a basis to deny a vacater. Let me point out that that is in direct tension with the idea that it's important to have precedence for the public to follow and then to say, but at the same time, this opinion is not likely to have any such effect. But that factor, too, is belied by the record. As we noted in our brief, the district court's June 9 judgment has already been cited in another voting rights case, and after briefing closed in this case, we identified an American Law Report article that also relates to vote dilution and cites to the district or court opinion. Well, there again, I think the argument really reasonably cuts the other way if we talk about the distinction in Bonnar-Marle between appellate opinions and district court opinions. As we all know, appellate opinions, if they're published, are binding precedent in the circuit and can't be overridden within the circuit, but a district court opinion even . . . I understand that this is a small district with only one division, but even in a district with multiple . . . with many more judges and many more divisions, there's no such thing as district law established by a district judge's opinion, so it is only persuasive authority or unpersuasive, depending on the viewpoint of the reader in deciding how to apply it. So it seems to me there's much less public interest in whether such an opinion technically stays on the books or doesn't. Your Honor, the public interest is one consideration, but the harm and prejudice to my clients who have lost the fundamental right to appeal is the primary consideration as identified by the Supreme Court and Bancorp, and that is the harm that they have suffered here. Well, that's . . . when I asked the question, you had just said that there was an important interest because the case had been cited, and I was just pointing out, and I don't hear you disagreeing, that it has no precedential effect, even for the very same district judge if faced with a similar question tomorrow. Well, I agree, Your Honor, and I did not mean to suggest that this opinion has important influence. What I meant to identify is that to the extent the Court held that the limited effect of the judgment was a basis to deny vacater, that's not supported by the record. But more importantly, there is not a single case where the limited effect of a judgment has been sufficient to outweigh both fault and public interest and shift the equities against vacater. The effect of a judgment has only ever been cited where the party seeking vacater is responsible for the mootness, and the equities, therefore, disfavor vacater, and it's in those cases that the breadth of the decision is cited as a basis to vacate. You would have us apply Bonner-Mall, then, to . . . and to say that it applies equally to district court and appellate opinions. Is that correct? Yes, Your Honor, and in fact, that's consistent with the circuit's practice. For example, in United States v. Jeffers, in Harris v. City of Houston, in both of the AT&T v. Dallas and Austin cases, this Court has vacated district court decisions that have been mooted on appeal, and in those cases, the Court never suggested that the fact that the underlying opinion was a district court opinion made any difference in the balancing of the equities. So certainly, reaching that conclusion would be consistent here. If the panel has no further questions, I would ask that you reverse the Rule 60 decision and vacate the district court's June 9 judgment with respect to plaintiff's Section 2 claim. All right. You've saved time for rebuttals. Thank you, Your Honor. Ms. Peck? May it please the Court, my name is Christina Peck. I'm here on behalf of the appellees, the City of Baton Rouge, the Parish of East Baton Rouge, and the Mayor-President of the City Parish. I think, first of all, I would like to clarify a bit of the record of what happened below. Initially, the appellants filed a motion to vacate the entire judgment. There was no distinction by the appellants as to the portions of the judgment that might have been rendered moot by the legislation, and the other portions of the judgment which were not affected at all by the legislation. The trial court determined that a portion of their claim was moot. That portion being the Section 2 claims where they sought prospective relief. These plaintiffs were questioned extensively by the court during the closing argument whether they were still claiming constitutional violations and other statutory violations, and they made it very clear to the court that they were not abandoning those claims, and therefore the court ruled on those claims, and the court ruled against the plaintiffs on all of those claims. In the court's June 9th decision, the only claim that the court found was mooted by the legislation was the prospective relief claims under Section 2. It specifically found that the Section 1983 and 1986 claims, which the plaintiffs continued to urge, had not been affected by the legislation. The appellants have not disputed or challenged that finding here, so therefore, at the time that they asked the court to vacate, although they were asking for the entire judgment to be vacated, the ruling was only the mooted part of the judgment was even eligible for vacature. So, there were issues that could have been appealed that were not appealed, and there was even an opportunity, the way I read the rules, after the court denied the Rule 60B motion, they still could have appealed the issues that were eligible for appealed and raised before this Court, the mootness claim and the vacature. Let us get back to the vacature issue, because under the . . . But part of the . . . you described, I think, as I understand it accurately, the portions that were not mooted, but as to those that were mooted, which are substantial other parts of the Court's opinion with regard to voting rights and so forth, you do have the effect of that. It is not . . . is that what we call a happenstance, the right category, has eliminated the jurisdiction of the Court to do anything. The question is, though, is that effectively, because it happened before there was an opportunity to appeal, deprives the party to challenge that on appeal? Now, we can say maybe they were not going to do it, I do not know, but they had a right to appeal. And that has to be taken into effect. What do you say to that? I say to that, Your Honor . . . That they can appeal the other parts does not really answer the question. Then there would not be an opportunity to vacature, but there would be a right to vacature. Any time there would be a claim of mootness through no fault of the party who is asking for vacature, then vacature would be automatic. There would be no other choice for the district court. And that flies in the face of the stately decision that says vacature is supposed to be determined on a case-by-case basis, governed by the facts of the particular case and not inflexible rules. And which deprivation of appeal, as the Court has said, almost inevitably takes you to vacating. Can you give me cases in which you have had a loss of appeal in which the vacateur was denied? Your Honor, the only cases are where the person who is seeking the vacature was actually influencing the decision. But I would suggest to the Court that I cannot find a case where the Court itself has indicated in his decision not to grant the vacature that he, in fact, may have influenced what caused the mootness. And for the Court's . . . I mean, if it . . . the mootness of the reality, nobody challenges that. And that portion of the question, in other words, what is the effect of deprivation of appeal, a loss of appeal? Well, I believe what the Court . . . the factors the Court looked at are important because what is the effect of leaving that portion of the opinion? The remainder of the opinion is going to be in place. All of the other findings by the Court with respect to no intentional discrimination are going to be out there. So the . . . Let me ask you that. What remedies were sought for the constitutional violations and all of the other things that you say didn't go out of the case? They sought monetary damages, and they sought attorney's fees, and initially . . . And that was denied. And that was denied. And initially, they sought a bailout, a bail-in. They wanted the entire state of Louisiana to be put back under the preclearance provisions because of a claim that this was enacted with intentional discrimination and continued to be enforced with continuing discrimination. The only claim that they abandoned was the bail-in claim, but the remainder of the claims were not abandoned. And again, what is the effect? Well, you're still going to have the judgment out there. The portion of the judgment that's been cited by another district court, which is Judge Brady, who's on the same district, the portions that he cited have nothing to do with the Section 2 portion. It talks about whether or not expert opinions would be stricken or allowed based on some of the missing of deadlines. But the bottom line is, the only portion of the opinion that would have been vacated is a very small portion, and it's very limited to its facts. The court itself indicated that there was only one election being relied on, and that was insufficient evidence, but that another election could have a different result. And again, part of the instruction of the court to the legislature was, because of his insufficiency of evidence, that they were encouraged to do something. That was not the first time the court had encouraged them to do something. In fact, the court had been encouraging them, the legislature, to take action for the three years that the case had been pending. I think the court recognized that his decision did influence the legislature based on the quickness with which they acted after the decision came down. So I don't think, the fact that there's nothing in the record, well, there was plenty in the parties to this case before they were dismissed, to do something. And then, again, when he was deciding that there was not sufficient evidence under the Section 2 claim, again, encouraging the legislature to do something. And I think the court recognized that there would be an undermining in the interest of justice if the court suggests the legislature do something and then vacates the judgment as a result of that. So I think he recognized that there's policy. I think he suggested that they do something because he said he couldn't get there under the law. So I don't know that it would undermine it. I think if you suggest . . . I think the consistency argument is very powerful in the context where the judge, I rule, and they sort of rely on that, then it gets mooted, and then I pull down the opinion. But what he said is, I thought the thrust of what he was saying was, and I may be mistaken about this, that while I can't do this legally, I mean, under the law, the law won't get us where you ought to go. You guys . . . this is a legislative problem. You take care of it. So I'm not sure the consistency is quite as large in that circumstance, but I think your point's well taken. Thank you, Your Honor. I believe there are any other comments for the other attorney? Thank you. All right. Thank you, Ms. Beck. Ms. Freel? Good morning. I think it's good morning. I'm not sure about the time, but may it please the Court, my name is Angelique Freel. I'm here on behalf of the defendant, State of Louisiana, the Attorney General, and the Governor for the State of Louisiana. I want to address one of the mischaracterizations that the plaintiffs made with regard to my brief where they said that essentially the state admitted in a brief that the court had no influence. That's a direct contravention of what's stated in the brief. In fact, at page 14, we say the district court encouraged a change in the law throughout the duration of the judicial proceedings. And in terms of what's in the record, the legislative history and past attempts to change the method of election judges of Baton Rouge City Court is contained in the record, and there's actual testimony from legislators in floor debate where they said they were waiting to see what the judge was going to do in this case. So that is an inaccurate representation. To the extent that this Court, based on the comments that you made, maintains that perhaps the district court was without jurisdiction to determine the mootness and that it should have been raised on appeal, you know, we agree at this point that the issues that the plaintiff thinks is moot is highly speculative and hypothetical because they never did file an appeal, and we can't really tell, you know, it's going to be a very fact-specific determination. There were about eight days remaining in which they could have filed an appeal, and my suggestion was, though, that it's simply that the court lost jurisdiction before the time had run for filing a notice of appeal. And also, you know, at every stage of the proceeding, the court has to determine whether or not there's Article III. Every stage of the proceeding, the court has to determine whether or not there's Article III jurisdiction to hear the proceeding, and I just want to point out that while there was a change in the method of electing judges, there still exists to this day two sections for that court, whereas at the beginning, at the inception of this lawsuit, there were five sub-districts. There still exists today four sub-districts, and whether or not this judgment is given prospective effect is very important for the public interest, one, because of the seriousness of the allegations that the plaintiffs failed to prove, as stated in the judgment, that they did not prove intentional discrimination as it relates to the enactment and the maintenance of that particular creation or method of electing judges, that law that created the method of electing judges. The court determined that the plaintiffs produced no evidence of intentional discrimination in terms of the public interest. Had they been successful, they could have possibly gotten the relief they wanted, which was the Section 3C bail-in. I have to disagree that they abandoned that. In fact, the June 9th judgment, the district court judge specifically denies the Section 3 bail-in, but that would have had a huge impact on Louisiana because it would have made Louisiana subject to preclearance, when right now, under Section 5, because Section 4 was declared unconstitutional, there's not that requirement. There is a major public interest in keeping the prospective impact of the judgment in place. You want to keep alive that holding. Right. You do, but that's the whole point. You want to keep that ruling alive. The fact of the matter is that the court had no . . . that that particular judgment, before the appeal could be lodged, the court lost jurisdiction to get into that kind of relief. Well, the court did not . . . It was mooted. But the court in its ruling on the motion to vacate specifically says that the claims with regard to 1983 and 1986 were not mooted and describes the intentional discrimination right there, so it was not the intent of the court to moot that. I thought you were talking about the Voting Rights Preclearance Rules. No, but in fact, all of that . . . all of those issues trickle under with regard to when you are looking at, say, totality of the circumstances. So, sure, when there's lack of evidence in the record, we certainly . . . when they have failed to maintain their claim, there was no excuse not to appeal some of these issues, and vacater cannot and is not allowed under the law to be a remedy when a party fails to appeal. There's no manifest injustice here. We have a situation . . . You're saying they had full opportunity to appeal and did not do . . . They did not, and they're using vacater as a way to get out of this adverse judgment. They lost. They still had the legislature change the districts to some degree, and so where's the manifest injustice? The full opportunity to appeal is 30 days from the judgment, and before that time, the judge could have appealed. There would have been some parts of that judgment that could have appealed, but they lost that appeal. If they filed a notice of appeal, then this court would have had to deal with the fact that those particular points of error had been . . . those particular claims had been mooted. Well, I mean . . . Right? Sure, but the thing is, to the extent that you would have made the same determination on the mootness, you may not have. I'm sorry? You may not . . . the court may not have made the same issue with regard to the mootness, and I think that this court has, at every stage of the proceeding, can look to see whether or not it considers there to be an existing live controversy. I thought it was undisputed that the voting rights claims here were mooted by the acts of the legislature. I argued on the district court level that the plaintiffs wanted a very specific remedy. They did not want an outlarge district. They wanted a flip-flop, a 2-3 versus a 3-2, so I'm not going to concede because you can just . . . and you can just take judicial notice and look at the laws that exist today and see that the court is still divided into two sections. I get your point. I understand that you want the benefit of that judgment. Well, you know, it's been a years-long battle, and, you know, you have to consider the fact that there's a public interest versus . . . I'm trying to get it straight in my own head. I apologize. You know, the court recommended to the legislature that there be a change. The legislature made the change. There certainly would be concerns and, you know, perhaps criticisms to the court if maybe the legislature didn't take that into consideration. There's been no manifested injustice to the extent that the plaintiffs have seen a change in the judicial election system. You know? I'm sorry. I understand. You know. Okay. Well, I will sit down unless you have any other questions. All right. Thank you, Ms. Friel. Mr. Aguilo? Yes, Your Honor. May it please the court, Grant Guyot on behalf of Tom Scheller in his official capacity as Louisiana Secretary of State. Just briefly because I only have a couple of minutes. The court earlier in the argument questioned whether there were more than two factors to be considered, and I can give you the site to that. There are, in fact, seven factors that this court has said you can consider, and that's out of the Edward H. Boland Company v. Banning Company case. That site is 6 Federal 3rd, 350. Also plaintiff's counsel had discussed the fact that there's no evidence in the record that the judge influenced the legislature to ask when, in fact, in open court on several occasions, the court talked about his disappointment that the case had gone forward this far without the legislature acting. So I would just ask the court to look carefully at the record and to note what the judge said in his ruling denying the motion to vacate, where he admits that he specifically encouraged the legislature to act, as he did state that publicly several times throughout the litigation. Real briefly, I just wanted to touch on the Secretary of State's involvement in this matter. Throughout this litigation, we've maintained that the Secretary of State has purely a ministerial role. He is responsible for implementing the laws passed by the legislature and signed by the governor. He does not have the authority to pass laws. He does not pass laws. He abides by any decision that comes out of the binding courts and the laws of the legislature. This decision should not be vacated. It was very fact-specific. The court determined, based on all the allegations raised against the Secretary of State, that the plaintiffs could not prevail on any of their claims against the Secretary of State. And Judge Higginbotham, I'll answer the question that you asked my co-counsel a few minutes ago. Yes, we definitely want this to stay on the books. This was a good decision for our client. Our client did nothing wrong. He's done nothing wrong this whole time, and we want this to stay on the books. Thank you. Thank you. Ms. Cohen, you saved time for rebuttal. Thank you, Your Honor. Reference to a plaintiff's constitutional claims and to evidence of intentional discrimination are a red herring. We're not seeking vacater with respect to the June 9 judgment as it relates to the constitutional claims. And the constitutional claims, as my colleagues have pointed out, were denied on totally independent grounds. So this court could and should vacate the June 9 judgment as it relates to the Section 2 claim without any fear that it would infect the district court's disposition of the constitutional claims. What about the Section 3C claims to bring Louisiana into preclearance? Your Honor, those are also, that would also be an independent, an independent claim. Well, but that would rely on a finding of intentional discrimination, which you just told us is not in the case anymore. You can't get 3C relief without a finding of intent. Understood, Your Honor. But we're only asking for vacater of the Section 2 claim and not anything with respect to the bail-in. So the disposition of this appeal, of the Rule 60 motion, does not in fact— I don't think you can get asked to be vacated are those portions that have been mooted. The opening prerequisite to any of this discussion is mootness, right? Absolutely, Your Honor. All right. So the first question is what's moot and what's not. And the Section 2 claim is— You don't get to pick and choose. Absolutely, Your Honor. And we're not picking and choosing. We're only seeking vacater— I understand why you'd like to, but— No, no. But we are only seeking vacater, to Your Honor's point, of the Section 2 claim because that's the only claim the district court found was mooted. I also would like to emphasize that this is not an aberration of a case. This Circuit and the Supreme Court have vacated a moot decision in every instance where the mootness was found. And that's because of the fundamental unfairness of keeping that judgment on the books. So whether or not defendants would like to keep the judgment is really beside the point and, if anything, emphasizes the importance of granting vacater in this case and emphasizes the potential prejudice to my clients of leaving that judgment on the books. The Court has no further questions. All right. Thank you, Ms. Cohen. Thank you, Your Honor.